# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ELAVON, INC., formerly known as NOVA INFORMATION SYSTEMS, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CIVIL ACTION CASE NO: 1:09-cv-00139-ODE |
| WACHOVIA BANK, NATIONAL ASSOCIATION; WELLS FARGO & COMPANY; and WELLS FARGO BANK, N.A., | ) ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER LIMITING DISCOVERY AND TO AMEND THE SCHEDULING ORDER

Pursuant to Federal Rule of Civil Procedure 26, Defendants Wachovia Bank, National Association ("Wachovia"), Wells Fargo & Company ("Wells Fargo"), and Wells Fargo Bank, N.A. (collectively, "Defendants") respectfully submit this Memorandum of Law in support of their Motion for a Protective Order Limiting Discovery and to Amend the Scheduling Order previously entered by the Court.

As explained more fully below, Defendants request that the Court sequence discovery in this case into two distinct phases:

- <u>Phase One</u>: Discovery relating to the proper interpretation of the parties' contract that Plaintiff claims Defendants breached; and

- <u>Phase Two</u>: Discovery relating to Plaintiff's damages (in the event the Court finds that Plaintiff is entitled to damages) and to Defendants' affirmative defenses.

Defendants submit that sequencing discovery in this manner is appropriate in light of the limited discovery that is necessary to address the threshold issues of contract construction versus the massive, expensive, and competitively sensitive discovery that would be required to address the remaining issues if it ever becomes necessary to do so.

## **INTRODUCTION**

This case is essentially a breach of contract action. Plaintiff had a contract with Wachovia (the "Agreement") pursuant to which Wachovia agreed to refer customers for certain merchant transaction processing services exclusively to Plaintiff. First Amended Complaint ("AC") (Doc. No. 1) ¶ 25. In exchange, Plaintiff paid Wachovia a fee. *Id.*, ¶ 37. In December 2008, in conjunction with its merger with Wells Fargo, Wachovia provided Plaintiff with notice that it was terminating the Agreement effective December 31, 2008 upon consummation of

the merger. *Id.*, ¶ 2. Plaintiff asserts two claims arising out of these facts: (1) that Wachovia had no right to terminate the contract and remains bound by its terms; and (2) that Plaintiff's exclusive contract rights extend to all of Wells Fargo as a result of the merger of Wachovia into Wells Fargo. Based on these claims, Plaintiff asserts entitlement to over $1 billion. Each of these claims turns on the language of the contract and, at best, a very small universe of facts.[1]

Having engaged in preliminary discovery in the case and thus having gained a greater appreciation for the full scope of information and materials that Plaintiff hopes to discover[2], Defendants move the Court to limit initial discovery in this case to discovery relating to these two threshold contract interpretation questions. Defendants fully recognize that this is a departure from the discovery plan jointly submitted by the parties and adopted in the current Scheduling Order, but believe that staging discovery in this fashion will save both parties from undergoing expensive and time-consuming discovery that may never be required into issues such as the state of the financial markets in 2008 and the turmoil in the banking system. Equally importantly, such a limitation will also protect extremely sensitive

---

[1] Plaintiff also asserts a claim for tortious interference against Wells Fargo. This claim is the subject of a pending motion to dismiss.

[2] For example, Plaintiff has asked Defendants to produce "[a]ll documents" relating to various aspects of merchant services transactions at Wells Fargo for the past seven years and "[a]ll documents" relating to Wachovia's financial condition in 2008.

commercial information regarding Wells Fargo's business relationship with First Data Merchant Services Corporation ("First Data") from disclosure to a competitor. In short, sequencing discovery into two phases makes sense in a case such as this, where a ruling by the Court on issues of contract interpretation could render much (if not all) of the remaining discovery unnecessary.

Defendants fully expect that these threshold contractual interpretation issues can and should be presented to the Court at the summary judgment stage of this case. A resolution of these core questions of law may end the litigation or dramatically change the nature and scope of any discovery that is necessary. For example, a ruling in Defendants' favor on the right to terminate would be likely to end the case. Similarly, a ruling in Plaintiff's favor on the right to terminate, combined with a ruling in Defendants' favor on whether the contract extends to all of Wells Fargo's business, would substantially alter and limit discovery of extremely competitive information. Defendants thus ask that the Court amend the Scheduling Order to provide for sequencing discovery as follows.

First, the parties will engage in discovery bearing on the proper construction of the Agreement. This will consist of (a) discovery relating to the parties' negotiation of the Agreement and its four amendments, (b) discovery relating to the discussions between Plaintiff and Wells Fargo in 2008, and (c) Wachovia's

December 31, 2008 termination.  Expensive and burdensome discovery regarding Plaintiff's alleged damages and regarding certain of Defendants' affirmative defenses to the breach of contract claim will be stayed.

Following summary judgment briefing and a ruling from the Court as to whether the Agreement permitted Wachovia's early termination, then, if necessary, the parties will engage in the extensive discovery regarding Plaintiff's damages and Defendants' affirmative defenses.  Given the enormity of this discovery, as well as the fact that it involves highly sensitive commercial and financial information, it does not make sense to engage in it at this point in the case, as it may ultimately be unnecessary.

Defendants have submitted this proposal to Plaintiff, but Plaintiff has refused to agree, despite the fact that such a discovery sequence will not only save Defendants' resources, but Plaintiff's as well.  In the interest of preserving resources, and in securing an efficient and inexpensive determination of this case, Defendants respectfully request that the Court exercise its broad discretion over discovery matters and grant Defendants' motion.

## BRIEF SUMMARY OF RELEVANT FACTS

I.    **Plaintiff's Breach of Contract Claim Against Defendants**

A.    **Plaintiff's Relationship with Wachovia**

Plaintiff is a merchant processing company which processes credit card, debit card, and other transactions for merchants.  AC ¶¶ 1, 16.  In 2002, Plaintiff entered into the Agreement with Wachovia.  *Id.*, ¶ 21.  Pursuant to the Agreement, Wachovia referred to Plaintiff any merchants or other entities interested in merchant processing services.  *Id.*, ¶ 25.  The Agreement was subsequently amended by Plaintiff and Wachovia four times, with the most recent amendment occurring in July 2008.  *Id.*, ¶ 21.

B.    **Wachovia's Termination of the Agreement**

Following the July 2008 amendment to the Agreement, the unexpected and unprecedented collapse of the housing market and financial services industry occurred, causing major financial institutions, such as Wachovia and Wells Fargo, to consider options for consolidation.  On October 3, 2008, Wells Fargo and Wachovia Corporation announced a planned merger.  *Id.*, ¶ 59.  Shortly after the merger announcement, Plaintiff initiated discussions directly with Wells Fargo regarding the current Agreement and also regarding a potential future and expanded alliance between the companies following the merger.  *Id.*, ¶ 60.

Plaintiff and Wells Fargo negotiated over the following three months via in-person meetings, telephone conferences and email in an attempt to come to a resolution regarding these issues or to enter into a tolling or "stand-still" agreement regarding the issues. *Id.*, ¶¶ 61-75. During the course of these discussions, Plaintiff threatened to assert that all of Wells Fargo's business was governed by the terms of the Agreement, including the contract's broad non-competition and non-solicitation provisions, following the merger with Wachovia, notwithstanding Wells Fargo's binding agreement with another company to provide merchant processing services for Wells Fargo's own pre-existing business. *Id.*, ¶ 92.

The discussions between Plaintiff and Wells Fargo were ultimately unsuccessful, and Wachovia sent a letter to Plaintiff terminating the Agreement effective December 31, 2008. *Id.*, ¶ 2.

### C.    Plaintiff's Complaint

Plaintiff subsequently brought this action. Plaintiff's Complaint alleges that Wachovia wrongfully terminated the Agreement. *Id.*, ¶¶ 78-87.[3] As a result of Wachovia's termination, Plaintiff claims that Defendants are in violation of several provisions of the Agreement. First, Plaintiff claims that Defendants "are violating

---

[3] Plaintiff's Complaint also includes a claim against Wells Fargo for tortious interference. Defendants have moved to dismiss that claim (Doc. No. 24) and are awaiting a ruling from the Court.

their obligations to refer merchants and other entities exclusively to" Plaintiff. *Id.*, ¶ 50.   Critically, Plaintiff contends that certain of the exclusive marketing and referral obligations contained in the Agreement now apply to Wells Fargo's own business operations due to the merger, *id.*, ¶ 51, despite Wells Fargo's separate joint venture with First Data to provide those services.   Second, Plaintiff claims that Defendants "are violating the non-competition and non-solicitation covenants found in Section 14.2" of the Agreement. *Id.*, ¶ 53.   Plaintiff claims damages in excess of $1 billion. *Id.*, ¶ 96.

Defendants deny that Wachovia wrongfully terminated the Agreement and that any provisions of the Agreement remain in effect.   Answer (Doc. No. 23) ¶ 2.   Defendants contend that the only relevant provision that survived its termination is Section 14.2(b), a non-solicitation clause that Wachovia has not violated. *Id.*, ¶ 83.   Defendants refute that the Agreement extends to legacy Wells Fargo business and that Plaintiff is entitled to damages of over $1 billion. *Id.*, ¶ 87.

## II.     Procedural History of Case

Plaintiff filed its First Amended Complaint on January 27, 2009.   *See generally* AC.   On March 26, 2009, Plaintiff served Defendants with 210 requests for production; 56 interrogatories; and 236 requests for admission.   Doc. Nos. 26, 27.   Many of Plaintiff's first set of discovery requests are aimed at financial and

other competitively sensitive data regarding Wells Fargo Merchant Services, L.L.C. ("WFMS"), a joint venture owned by Wells Fargo Bank, N.A. and First Data that serves the same merchant processing function for Wells Fargo that Plaintiff performed for Wachovia. For example, among many other broad and burdensome requests, Plaintiff's requests for production to Wells Fargo seek "[a]ll documents referring or relating to gross revenues from Merchant Services transactions by Wells Fargo Merchants on a monthly and annual basis since January 1, 2002" (Req. No. 69) and "[a]ll documents referring or relating to the dollar value of Merchant Services transactions by Wells Fargo Merchants on a monthly and annual basis since January 1, 2002" (Req. No. 68).

After receiving Plaintiff's first set of discovery, but before serving written responses, the parties negotiated the information to be included in their Joint Preliminary Report and Discovery Plan. Doc. No. 32. After reviewing Plaintiff's discovery requests in greater detail, Defendants realized that Plaintiff's requests were exceptionally broad and compliance therewith would be expensive and burdensome. *See* Declaration of Debra B. Rossi, ¶¶ 8-11, attached hereto as Exhibit A. In a letter dated July 6, 2009, Defendants' counsel proposed to phase discovery in this manner. Plaintiff's counsel rejected this proposal in a letter dated July 13, 2009.

On July 9, 2009, Plaintiff served its Second Set of Requests for Production. These requests seek extraordinarily broad information regarding the widely publicized events of 2008 involving the crisis in the United States financial system and the impact of the crisis on Wachovia, changes in Wachovia's senior management, Wachovia's subsequent merger discussions with certain other financial institutions, and Wachovia's ultimate merger with Wells Fargo. *See generally* Declaration of Chris Ullrich, attached hereto as Exhibit B. These requests presumably relate to Defendants' affirmative defenses of commercial impracticability and force majeure. Compliance with these requests would require an enormous expenditure of resources that may well not be necessary depending on the issues of contract interpretation. *See id.*, ¶ 7.

As noted earlier, the Court has entered a Scheduling Order based on deadlines jointly proposed by the parties. Doc. No. 42. Nonetheless, after studying Plaintiff's discovery requests and considering the amount of sensitive responsive information, Defendants believe that the current Scheduling Order should be amended in order to allow discovery to proceed in a logical manner and without wasted expenditures of time and money. Thus, Defendants request that the Court amend the Scheduling Order as set forth below and in the [Proposed] Amended Scheduling Order attached hereto.

## ARGUMENT AND CITATION OF AUTHORITY

I.    **The Court Has the Discretion to Order Discovery to Proceed as Defendants Propose.**

Rule 1 of the of the Federal Rules of Civil Procedure sets out a fundamental instruction that all of the rules governing procedures in the federal courts should be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."  Rule 26(c) applies this principle to discovery, providing that "[a] party . . . from whom discovery is sought may move for a protective order" and that "[t]he court may, for good cause, issue an order . . . limiting the scope of disclosure or discovery to certain matters."  Rule 26(c)(1)(G) specifically recognizes that a court may enter an order "requiring that . . . commercial information not be revealed or be revealed only in a specified way."

The trial court has "wide discretion in setting the limits of discovery." *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991); *see also DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 678 (N.D. Ga. 2007) ("The Court's exercise of discretion to appropriately fashion the scope and effect of discovery will be sustained unless it abuses that discretion to the prejudice of a party."); *Outside the Box Innovations, LLC, d/b/a Union Rich USA v. Travel Caddy, Inc.*, 2007 U.S. Dist. LEXIS 96069, *28-29 (N.D. Ga. Mar. 27, 2007) (granting defendants' motion to defer damages-related discovery).

Recognizing the discretion afforded to the trial court to limit discovery, and acknowledging the objective of construing the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding," Defendants request that the Court amend the Scheduling Order and sequence discovery into two phases: (1) discovery relating to the proper interpretation of the Agreement; and (2) discovery relating to Defendants' affirmative defenses and Plaintiff's damages, in the event the Court finds that the Agreement did not, by its terms, permit Wachovia's termination.   This sequencing will preserve the resources of both parties and will ensure that highly sensitive information – information that may never need to be produced – will only be produced to Plaintiff, a direct competitor of WFMS (*see* Exhibit A, ¶ 4), if the Court determines that Defendant is liable for breach of contract.

## II.    This Case Involves Threshold Issues Of Contract Interpretation That Should Be Resolved Before Proceeding With Additional Discovery.

The parties' basic dispute in this case is two-fold: (1) whether the Agreement permitted Wachovia's early termination, and, if it did not, (2) whether Plaintiff's contractual damages extend to Wells Fargo's business in light of its merger with Wachovia.   Plaintiff contends that Section 4.3, the termination provision of the Agreement, did not authorize Wachovia's termination.  AC ¶ 80. Plaintiff further contends that the Agreement applies to Wells Fargo as a successor

to Wachovia and that it is entitled to the legacy Wells Fargo business (and damages based on its purported loss of this business as a result of Wachovia's termination).  AC ¶ 96.  Defendants dispute Plaintiff's contention and maintain that Wachovia's termination of the Agreement was proper and permitted under the contract's terms.  Answer ¶ 2.  Defendants further dispute that the contract reaches Wells Fargo's business.  *Id.*, ¶ 87.

Defendants intend to present their arguments regarding the proper construction of the contract in greater detail at the summary judgment stage of this case.  These basic issues, however, should be decided by the Court before the parties enter into extensive and costly discovery that ultimately may not be necessary.  A ruling by the Court on the proper construction of the Agreement would significantly streamline this case and would properly focus any additional discovery that may be necessary in light of the Court's ruling.

In *Outside the Box Innovations, LLC, d/b/a Union Rich USA v. Travel Caddy, Inc.*, 2007 U.S. Dist. LEXIS 96069, *28-29 (N.D. Ga. Mar. 27, 2007), this Court granted the defendants' motion to defer damages-related discovery until the Court ruled on the parties' summary judgment motions.  The defendants argued that the damages issues in the case were "too complex presently, and may be simplified greatly by rulings on summary judgment."  *Id.* at *29.  The Court

agreed, stating that "[a] summary judgment ruling will undoubtedly clarify the issues for which damages evidence must be obtained." *Id.*

Just as in *Outside the Box*, deferring certain discovery until after the Court rules on the propriety of Wachovia's termination of the Agreement is appropriate in this case. To be clear, Defendants are not proposing a stay of all discovery. Discovery aimed at the parties' negotiation of the Agreement in 2002, as well as the negotiations of the four amendments to the contract, may be relevant to the threshold contractual interpretation issues. Discovery aimed at Wachovia's actual termination of the Agreement on December 31, 2008 is also relevant and appropriate at this stage of the case. But discovery into: (1) Wells Fargo's and WFMS' historical financial data and (2) Defendants' commercial impracticability and force majeure affirmative defenses should not proceed now, as discovery relating to these broad categories may be unnecessary.

## III. The Burden Associated With The Discovery Plaintiff Seeks is Significant and Involves the Disclosure of Sensitive Information That Should Not Be Produced To a Competitor.

Plaintiff's discovery requests relating to damages and Defendants' commercial impracticability and force majeure defenses seek an incredible volume of information. *See* Exhibit B, ¶¶ 4-7. Defendants will incur significant expense producing responsive documents. Inquiring into these issues during depositions

will not only expose more individuals to depositions, but will lengthen the questioning in all depositions.  Moreover, the information Plaintiff seeks is highly sensitive commercial information.  *Id.*, ¶¶ 4-8.  These facts compel a sequential discovery period.

### A. Discovery Relating to Plaintiff's Damages and Defendants' Affirmative Defenses Will Be Expensive and Time-Consuming.

Both (1) discovery relating to Plaintiff's damages, which purportedly reach the legacy Wells Fargo business, and (2) discovery relating to Defendants' commercial impracticability and force majeure defenses will be incredibly burdensome.  Plaintiff has requested multiple categories of documents regarding Wells Fargo's merchant services processing business over the last <u>7 years</u>.  *See* Exhibit A, ¶ 9.  In addition, based on Defendants' commercial impracticability and force majeure defenses, Plaintiff seeks wide-ranging discovery into the turmoil in the financial industry in 2008 prior to Defendants' merger, the impact of these events and other unrelated matters (such as the Golden West acquisition by Wachovia) on Wachovia's financial condition, the discussions between Wachovia and other financial institutions and financial advisers, and changes in Wachovia's senior management before the merger.  *See* Exhibit B, ¶ 4.  Substantial time and financial resources will be required to produce relevant documents and deponents bearing on these issues.  *Id.*, ¶ 7.

Given the threshold questions of law the Court must determine before these issues will be relevant to the case, discovery on these issues should not take place unless and until the Court determines that Wachovia did not have a right to terminate the contract.  Proceeding with discovery in this sequential fashion does not prejudice Plaintiff.  Rather, it preserves the resources of both parties, as neither will have to waste time and money on extensive document productions and depositions regarding issues that may never be relevant. Given the burden associated with the broad discovery sought by Plaintiff, the Court should exercise its discretion and sequence discovery in this case.

**B.    The Discovery Plaintiff Seeks Requests Sensitive Commercial Information That Should Not Be Revealed to a Competitor Unless Absolutely Necessary.**

In addition to the expense and time associated with discovery into Plaintiff's alleged damages and Defendants' affirmative defenses, Plaintiff seeks highly sensitive commercial information regarding WFMS.  *See* Exhibit A, ¶¶ 4-7. WFMS, a joint venture owned by Wells Fargo Bank, N.A. and First Data, is a direct competitor of Plaintiff.  *Id.*, ¶ 4.  Both entities are engaged in merchant services processing and compete on a daily basis for the business of merchants who are seeking a company to process credit transactions.  *Id.*  As such,

Defendants should not be required to share information now that may never be relevant.

Examples of the types of categories of competitively sensitive documents that Plaintiff seeks include:

(1)  "Documents sufficient to identify all Wells Fargo customers who have been referred to Wells Fargo Merchant Services, L.L.C. or First Data regarding Merchant Services since January 1, 2002" (Request for Prod. No. 43 to Wells Fargo & Co.);

(2)  "Documents sufficient to identify, on a customer-by-customer basis, the gross revenues of all Wells Fargo customers who have been referred to Wells Fargo Merchant Services, L.L.C. or First Data regarding Merchant Services since January 1, 2002" (Request for Prod. No. 44 to Wells Fargo & Co.); and

(3)  "Documents sufficient to identify, on a customer-by-customer basis, the gross revenues from Merchant Services transactions of all Wells Fargo customers who have been referred to Wells Fargo Merchant Services, L.L.C. or First Data regarding Merchant Services since January 1, 2002" (Request for Prod. No. 45 to Wells Fargo & Co.).

Sharing this type of information with a competitor when it may never be relevant to the case subjects Defendants to the "annoyance, embarrassment, oppression, or undue burden" that Rule 26(c) is intended to prevent.

As the court held in *Duracell Inc. v. SW Consultants, Inc.*, "[t]he discovery rules are not intended to forfeit a party's ability to compete effectively in the market by opening up tangentially relevant financial and marketing information to competitors." 126 F.R.D. 576, 578 (N.D. Ga. 1989) (rejecting the plaintiff's

argument that it was entitled to marketing and financial information "at this stage of the litigation"). In *Duracell*, the court rejected the plaintiff's argument that it needed discovery relating to the defendant's marketing strategies to assess damages, finding that "at this stage of the litigation, plaintiff's argument that it must discover into damages is not compelling." *Id.* at 579. Explaining that it "must balance the potential harm to the defendants from disclosure against the need plaintiff has shown," the court found that "this balance tips decidedly in favor of protecting [the defendant's] marketing data <u>until plaintiff shows it is necessary for the litigation</u>." *Id.* at 579. (emphasis added). Balancing the harm to Defendants from disclosure to a competitor of information regarding its customers against Plaintiff's purported need for information that may never be relevant, the balance in this case tips in favor of staying disclosure of such information unless and until the Court finds that Wachovia improperly terminated the Agreement.

## IV.    The Scheduling Order Should Be Amended To Sequence Discovery.

Sequencing discovery as requested in this motion requires the Court to amend the Scheduling Order currently in place. *See* Doc. No. 42. Defendants have attached a [Proposed] Amended Scheduling Order for the Court's review. The deadlines included in the [Proposed] Amended Scheduling Order are

reasonable and will not prejudice Plaintiff, while ensuring that this case proceeds efficiently.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court grant its Motion to Amend the Scheduling Order and for a Protective Order Limiting Discovery and enter the [Proposed] Amended Scheduling Order attached hereto.

Respectfully submitted, this 19th day of August, 2009.

/s L. Joseph Loveland
L. Joseph Loveland
jloveland@kslaw.com
Tracy C. Braintwain
tbraintwain@kslaw.com
Jennifer D. Fease
jfease@kslaw.com

**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel: 404-572-4600
Fax: 404-572-5138

Attorneys for Defendants
Wachovia Bank, National
Association, Wells Fargo &
Company and Wells Fargo

## **CERTIFICATION OF GOOD FAITH CONFERENCE**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, I hereby certify that counsel for the parties conferred in good faith in an attempt to resolve this matter.

This 19th day of August, 2009.

s/ L. Joseph Loveland<br>
L. Joseph Loveland<br>
Georgia Bar No. 459350

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D) of the Northern District of Georgia, I hereby certify that this pleading has been prepared in compliance with Local Rule 5.1(B).

This 19th day of August, 2009.

s/ L. Joseph Loveland
L. Joseph Loveland
Georgia Bar No. 459350

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 19, 2009 I electronically filed the foregoing

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**

**MOTION FOR A PROTECTIVE ORDER LIMITING DISCOVERY AND**

**TO AMEND THE SCHEDULING ORDER** with the Clerk of Court using the

CM/ECF system, which will automatically send email notification of such filing to

the following attorneys of record:

> FELLOWS LABRIOLA LLP
> Henry D. Fellows, Jr.
> Kevin P. Weimer
> Peachtree Center
> Suite 2300 South Tower
> 225 Peachtree Street, N.E.
> Atlanta, Georgia 30303-1731
>
> WILLIAMS & CONNOLLY LLP
> Bruce R. Genderson
> Edward C. Barnidge
> Scott K. Dasovich
> 725 12th Street, N.W.
> Washington, D.C. 20005

This 19th day of August, 2009.

> s/ L. Joseph Loveland
> L. Joseph Loveland
> Georgia Bar No. 459350